RECEIVERS OF STONINGTON BANK *vs.* BAPTIST SOCIETY OF GROTON AND OTHERS.

The charter of a bank provided that ecclesiastical societies might subscribe for its stock, with the privilege of withdrawing their subscriptions at any time, on giving six months' notice to the directors. Pursuant to this provision certain ecclesiastical societies subscribed for stock, and afterward gave the required notice of withdrawal. The bank afterward went into liquidation by the appointment of receivers, and its assets proved sufficient for the payment of all liabilities, leaving in the hands of the receivers funds sufficient to refund to the privileged stockholders in full the amounts subscribed by them, with a balance for distribution among the other and general stockholders.

Held, that the societies were stockholders, and not creditors, and as such were entitled only to their proportion of the assets after the payment of debts, and that no distinction should be made in their favor in the distribution of the funds.

PETITION by the receivers of the Stonington Bank, praying for advice in the distribution of the funds ; brought to the Superior Court for New London county, and heard before *Sanford, J.*, who found the following facts :

The Stonington Bank was incorporated by act of the legislature, in 1822.   By the provisions of the charter the capital stock was to consist of one thousand shares of the par value of fifty dollars.   In addition to which, ecclesiastical societies had the right of subscribing for certain shares, with the privilege of withdrawing the same at any time on six months' notice to the directors.   Pursuant to the provisions of the charter, the Ecclesiastical Society of North Stonington subscribed for seventy-five shares, the Second Ecclesiastical Society of Stonington for seven shares, and paid for the same at par, or fifty dollars the share.

In August or September, 1867, the bank became involved in difficulty, and it was deemed advisable by a majority of the stockholders that its affairs should be closed up, and its charter surrendered.   Under the provisions of the statute of 1867, application was made on the 24th of October, 1867, to a judge of the Supreme Court for the appointment of receivers, who were duly appointed on the 2d of November, 1867.   Prior to the appointment of such receivers, and prior to any action of the stockholders looking to such an appointment, said ecclesiastical societies gave written notice to the bank of their desire and intention to withdraw their shares, by leaving such notice at the banking house with the parties having its affairs in charge, the cashier having absented himself a few days before.   At the time of giving such notice these societies had no knowledge of the condition of the bank, but surmised, from the fact that the cashier had left, and from rumors then prevalent, that the bank was in trouble.   The bank was not in fact insolvent, and its receivers in the performance of their duties have paid up and settled all claims against the bank presented within the time or times limited for the presentation of claims against it, and there now remain in the hands of the receivers funds sufficient to refund to the privileged stockholders in full the amounts subscribed by them, with a balance for distribution among the other and general stockholders.

The court thereupon decreed that the receivers should appropriate the avails of the property of the bank in payment of the liabilities of the bank in the following order: first, to the payment of the charges and expenses of settling its concerns; second, to the payment of the bank notes and bills; thirdly, to the payment of all deposits by the treasurer of the state, or by other persons; fourthly, to the payment of all sums which had been subscribed and paid in by the state or school fund; fifthly, to the payment of all other liabilities, viz: to the payment in full of the stock subscribed by the ecclesiastical societies named in the finding of the court, and held by them at the time notice was given, as found by the court, at the par value of said stock, to the extent of the whole number of shares held by each; and lastly, distribute the surplus among the remaining stockholders in proportion to the amount held by each.

The petitioners filed a motion in error, assigning for error that the court erred and mistook the law in decreeing, upon the facts found, that the respondents, as privileged stockholders, should be paid in full the amount subscribed by them for stock, and not be paid pro rata with the other stockholders.

*Lippitt*, for the plaintiffs in error.

*Halsey* and *Babcock*, for the defendants in error.

SEYMOUR, J.   The Stonington Bank being in process of liquidation under the provisions of the act of 1867, chapter 94, the receivers made application to the Superior Court for direction as to the proper distribution of the funds.   The Superior Court has made a finding of the facts and passed a decree, and the case comes to this court by motion in error filed by the receivers.   The facts appear concisely and clearly in the finding, and need not be recited here.   The decree treats the ecclesiastical societies as creditors of the bank, and entitled as such to participate in the funds.   The receivers complain of this, and say that the societies are stockholders, and ought to be treated as such, and to share with the other

stockholders the losses and misfortunes which have befallen the bank. This question must depend upon the construction of the 317th section of the Act Concerning Communities and Corporations, in connection with the charter of the bank.

The provision in the charter in relation to subscriptions by the school fund and by ecclesiastical societies is similar to that commonly found in the bank charters of the state. The societies may within certain limits subscribe and become owners of stock, with the privilege *of withdrawing the shares so subscribed* upon six months' notice. In the case under consideration notice was given before the bank went into liquidation, but the six months expired after the receivers had been appointed. The question is to what were the societies entitled at the end of the six months. Their privilege by the terms of the charter is to *withdraw the shares by them subscribed.* It seems to us that by subscribing for the stock the societies become stockholders, and that when a stockholder withdraws his shares, he takes the proportionate part of the assets pertaining to those shares, and such we understand to be the construction which has been given to these charters in all cases where the bank has become insolvent, or has gone into liquidation. Where however shares have been withdrawn while the bank is continuing its business, the practice has been, we suppose, to treat the shares as being of par value, neither more nor less; the theory being that banks divide all their earnings, and nothing more than their earnings, and while a bank is carrying on its business it would be impracticable to ascertain the value of its assets, except in the somewhat arbitrary manner above indicated. But in the case of insolvency, it was early held in the Eagle Bank cases, reported 7 Conn., that the privileged stockholders (as they are called) withdrawing their shares take their proportionate share of the property after all debts are paid, and no more. In those cases the assets were insufficient to pay the debts, and the question was between creditors and these quasi stockholders. In the case before us the assets are sufficient to pay the debts, and something remains to be divided among the stockholders. The question here therefore is between different classes of

stockholders, and the equitable considerations are not precisely the same as in the Eagle Bank cases. But the question turns, not upon equitable considerations, but mainly on the fair construction to be given to the phrase, "withdrawing of shares," and it is so treated by the court in the cases in 7 Conn., and also in the recent case of *State* v. *Phœnix Bank*, 34 Conn., 238. In conformity with the decisions in those cases, we regard a stockholder's share as his proportion of the assets after debts paid and liabilities satisfied, and think that ecclesiastical societies who have subscribed for stock under the provisions of the charter of the bank are stockholders, and that no distinction can or ought to be made in their favor in the distribution of the funds by the receivers.

It was urged in argument that the 317th section of the Act Concerning Communities and Corporations does provide for stock subscribed by the state and school fund, and gives to such stock, whether withdrawn or not withdrawn, a preference over all creditors of the bank except depositers and bill-holders, and the claim is that, by parity of reason, the stock subscribed by the societies should have the same privilege. All that we can say on this subject is, that the state by its sovereign authority gives itself by this act a somewhat extraordinary priority, and we cannot extend that priority by construction beyond the precise extent fixed by the legislature.

We must therefore render judgment that there is error in the decree complained of.

In this opinion the other judges concurred.